No. 23-50040

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**,
Plaintiff - Appellee

v.

**RICHARD SCHOROVSKY,**
Defendant - Appellant

---

On Appeal from the United States District Court for the
Western District of Texas, Midland-Odessa Division
U.S.D.C. No. 7:22-cr-00173 (1)

---

**BRIEF OF APPELLANT RICHARD SCHOROVSKY**

---

May 5, 2023

John A. Kuchera

210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com

*Attorney for Appellant*

## <u>Certificate of Interested Persons</u>

The undersigned counsel of record for Appellant certifies that the following parties have interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusals in accordance with Local Rule 28.2.1:

U.S. District Judge: David Counts, 200 E. Wall, Midland, Texas 79701

U.S. Magistrate Judge: Ronald C. Griffin,; 200 East Wall, Room 101, Midland, Texas 79701

AUSA: Jason Duey, 400 West Illinois, Suite 1200, Midland, Texas 79701

AUSA: John A. Fedock, 400 West Illinois, Suite 1200, Midland, Texas 79701

AUSA: Maria Lopez, 400 West Illinois, Suite 1200, Midland, Texas 79701

Appellant's Trial Counsel: Susannah Elizabeth Prucka, 303 West Wall Street, Suite 1000, Midland, Texas 79701

Government Appellate Counsel: Joseph H. Gay, Jr., 601 N.S. Loop 410, Suite 600, San Antonio, Texas 78216

Appellant's Appellate Counsel: John A. Kuchera, 210 N. 6th Street, Waco, Texas 76701

/s/ John A. Kuchera
John A. Kuchera

## Statement Regarding Oral Argument

Undersigned counsel has been appointed under the Criminal Justice Act (CJA) to represent Appellant on appeal. Therefore, the internal operating procedures of this Court makes oral argument mandatory unless, after examination of the briefs and record, a three-judge panel of this Court shall be unanimously of the opinion that (1) this appeal is frivolous, (2) the dispositive issue or set of issues has been authoritatively decided or (3) the facts and legal arguments are adequately presented in the briefs and record and the decision process would not be significantly aided by oral argument. See Rule 34(a), Federal Rules of Appellate Procedure, Local Rule 34.8 and IOPs Fifth Circuit Rules & IOPs.

/s/ John A. Kuchera
John A. Kuchera

# Table of Contents

**Page**

Certificate of Interested Persons ii

Statement Regarding Oral Argument iii

Table of Contents iv-vi

Table of Authorities vii-xiii

Statement of Jurisdiction xiv

Statement of Issues Presented xv-xvi

Statement of the Case 1-2

Summary of the Argument 3-6

Argument and Authorities

1. Because the Government failed to prove through *Shepard*-approved documents that Schorovsky's two prior robbery convictions were committed on separate occasions (as required by the ACCA), the district court erred in holding that Schorovsky's the convictions were committed on separate occasions. 7-15

   (a) *The Armed Career Criminal Act and Wooden v. United States* 7-9
   (b) *Proving an ACCA enhancement* 9-10
   (c) *Background* 10-11
   (d) *Standard of review and error preservation* 11
   (e) *Analysis* 11-15

2. Alternatively, because (1) a jury did not find beyond a      16-19
   reasonable doubt that Schorovsky committed the robberies on
   occasions different from one another, and (2) Schorovsky did
   not admit to that fact, the district court's finding of that fact
   violated *Apprendi v. New Jersey.*

   *(a) Analysis*                                                16-18
   *(b) Plain error*                                             19

3. Schorovsky was improperly characterized as an armed          20-35
   career criminal for the reason that his Texas predicate
   burglary conviction can be committed by conduct that amounts
   to nothing more than entering a storage shed in somebody's
   backyard with the intent to take a lawn mower.

   *(a) ACCA and burglary*                                       20
   *(b) Background*                                              20
   *(c) The rules*                                               21-23
   *(d) Generic burglary after United States v. Stitt*          23-25
   *(e) The Texas burglary statute*                             25-26
   *(f) Analysis*                                                26-29
   *(g) Error preservation and standard of review*              29-30
   *(h) Harm*                                                    30-31
   *(i) But what about United States v. Herrold II?*            31-35

4. Alternatively, given that "burglary of a dwelling" is no     36-42
   longer considered a violent crime under the Career Offender
   Guideline, Schorovsky's 180-month mandatory minimum
   sentence under the ACCA violates his due process right to
   notice, and is contrary to the goals, purpose and objectives
   of the Sentencing Commission.

   *(a) Historical interplay between the career-offender Guideline*   36
       *and the ACCA*
   *(b) Amendment 798*                                          37-38
   *(c) Dueling "laws"*                                         38-41
   *(d) Rule of lenity*                                         42

5. Alternatively, Schorovsky did not enter a knowing, voluntary
guilty plea because the magistrate judge taking the plea
misinformed him as to the maximum statutory sentence he
could receive if found to have three previous convictions for a
violent felony or a serious drug offense.                                43-57

   (a) The ACCA as compared to the Sentencing Guidelines        43-44
   (b) Background                                                44-47
   (c) Plea voluntariness, Rule 11 and standards of review       47-49
   (d) Instructive case                                          50-51
   (e) Error preservation                                        51-55
   f) Analysis                                                   56-57

Relief Requested                                                          58

Certificate of Service                                                    59

Certificate of Compliance                                                 59

# Table of Authorities

Page(s)

## Cases

*Allen v. State,*
719 S.W.2d 258 (Tex. App.—Waco 1986, no pet.) .............................. 28

*Apprendi v. New Jersey,*
530 U.S. 466 (2000) ........................................................................... 16

*Batiste v. State*,
1993 Tex. App. LEXIS 3020 (Tex. App.—Houston [1st
Dist.] 1993, no pet.) ........................................................................... 28

*Boykin v. Alabama,*
394 U.S. 238 (1969) ........................................................................... 48

*Brecht v. Abrahamson,*
507 U.S. 619 (1993) ........................................................................... 34

*Brown v. United States,*
929 F.3d 554 (8th Cir. 2019) ............................................................. 32

*Carter v. S. Cent. Bell,*
912 F.2d 832 (5th Cir. 1990) ............................................................. 33

*Chalmers v. City of L.A.,*
No. 82-6112, 1984 U.S. App. LEXIS 22615 (9th Cir. 1984) .............. 40

*Dalton v. Battaglia,*
402 F.3d 729 (7th Cir. 2005) ............................................................. 48

*Descamps v. United States*,
570 U.S. 254 (2013) ........................................................ 16, 19, 21, 22

*Ellett v. State*,
607 S.W.2d 545 (Tex. Crim. App. 1980) ............................................ 27

*Elmakhzoumi v. Sessions*,
883 F.3d 1170 (9th Cir. 2018) ........................................................... 32

*Frizzell v. State*,
  1987 Tex. App. LEXIS 8318 (Tex. App.—Houston [14th
  Dist.] 1987, no pet.) (unpublished) ...................................................... 28

*Gonzales v. Duenas-Alvarez*,
  549 U.S. 183 (2007) ........................................................................... 32

*Hill v. Lockhart*,
  474 U.S. 52 (1985) ............................................................................. 48

*In re J.T.*,
  824 S.W.2d 671 (Tex. App.—Fort Worth 1992, no pet.) .................... 28

*James v. United States*,
  550 U.S. 192 (2007) ................................................................... 36, 38

*Kemp v. State*,
  2020 Tex. App. LEXIS 2506 (Tex. App.—Fort Worth Mar.
  26, 2020, no pet.) (unpublished) ........................................................ 28

*Lambert v. California*,
  355 U.S. 225 (1957) ........................................................................... 38

*Lester v. United States*,
  921 F.3d 1306 (11th Cir. 2019) ......................................................... 36

*Lewellyn v. Wainwright*,
  593 F.2d 15 (5th Cir. 1979) ............................................................... 48

*Lopez v. State*,
  660 S.W.2d 592 (Tex. App.—Corpus Christi 1983, pet.
  ref'd) ................................................................................................. 28

*Mathis v. United States*,
  579 U.S. 500 (2016) ................................................................ *passim*

*Moncrieffe v. Holder*,
  569 U.S. 184 (2013) ........................................................................... 22

*Oaks v. Wainwright*,
  445 F.2d 1062 (5th Cir. 1971) ........................................................... 49

*Roberts v. Maine,*
    48 F.3d 1287 (1st Cir. 1995) ............................................................ 39

*Rubino v. Lynaugh,*
    845 F.2d 1266 (5th Cir. 1988) .......................................................... 39

*Shepard v. United States,*
    544 U.S. 13 (2005) ........................................................... 10, 12, 13

*Shular v. United States,*
    140 S.Ct. 779 (2020) ....................................................................... 21

*Sledge v. State,*
    953 S.W.2d 253 (Tex. Crim. App. 1997) ........................................ 14

*Stinson v. United States,*
    508 U.S. 36 (1993) ........................................................................... 39

*Taylor v. United States,*
    495 U.S. 575 (1990) ......................................................................... 24

*United States v. Bass,*
    404 U.S. 336 (1971) ......................................................................... 42

*United States v. Beard,*
    913 F.2d 193 (5th Cir. 1990) ............................................................ 39

*United States v. Buford,*
    889 F.2d 1406 (5th Cir. 1989) .......................................................... 38

*United States v. Carreon-Ibarra,*
    673 F.3d 358 (5th Cir. 2012) ...................................................... 49, 57

*United States v. Constante,*
    544 F.3d 584 (5th Cir. 2008) .............................................................. 9

*United States v. Driscoll,*
    892 F.3d 1127 (10th Cir. 2018) ....................................................... 29

*United States v. Flores,*
    922 F.3d 681 (5th Cir. 2019) ............................................................ 11

*United States v. Fuller*,
    453 F.3d 274 (5th Cir. 2006)....................................................... 10, 15

*United States v. Gaspar-Felipe*,
    4 F.4th 330 (5th Cir. 2021) ............................................................... 30

*United States v. Gray*,
    581 F.3d 749 (8th Cir. 2009).................................................. 50, 51, 53

*United States v. Hamilton*,
    46 F.4th 389 (5th Cir. 2022) ............................................................ 42

*United States v. Hernandez*,
    203 F.3d 614 (9th Cir. 2000)............................................................. 48

*United States v. Hernandez*,
    234 F.3d 252 (5th Cir. 2000) ............................................................ 48

*United States v. Herrold*,
    883 F.3d 517 (5th Cir. 2018) (en banc)............................ 26, 33, 34, 35

*United States v. Herrold*,
    941 F.3d 173 (5th Cir. 2019) (en banc)...................................... *passim*

*United States v. Hornyak*,
    805 F.3d 196 (5th Cir. 2015)....................................................... 18, 44

*United States v. Hunley*,
    No. 20-6285, 2023 U.S. App. LEXIS 5770 (6th Cir. 2023) ................ 19

*United States v. Int'l Minerals & Chem. Corp.*,
    402 U.S. 558 (1971) ......................................................................... 39

*United States v. Jones*,
    951 F.3d 1138 (9th Cir. 2020) ......................................................... 33

*United States v. Man*,
    No. 21-10241, 2022 U.S. App. LEXIS 32807 (9th Cir.
    2022) ................................................................................................ 19

*United States v. McCarthy*,
    54 F.3d 51 (2d Cir. 1995) ................................................................. 36

*United States v. Newbold,*
791 F.3d 455 (4th Cir. 2015) ............................................................ 34

*United States v. Price,*
No. 93-1892, 1993 U.S. App. LEXIS 26406 (7th Cir. 1993) ............... 40

*United States v. Reyes,*
300 F.3d 555 (5th Cir. 2002) ........................................................ 47, 49

*United States v. Rivera-Maldonado,*
560 F.3d 16 (1st Cir. 2009) ............................................................. 57

*United States v. Rodriquez,*
553 U.S. 377 (2008) ........................................................................ 56

*United States v. Smith,*
184 F.3d 415 (5th Cir. 1999) ........................................................ 47, 49

*United States v. Solano-Hernandez,*
761 F. App'x 276 (5th Cir. 2019) ...................................................... 14

*United States v. Stevens,*
No. 20-11264, __ F. App'x __, 2022 U.S. App. LEXIS 35317
(5th Cir. 2022) ............................................................................... 10

*United States v. Stitt,*
586 U.S. __, 139 S.Ct. 399 (2018) ............................................. *passim*

*United States v. Walker,*
234 F.3d 780 (1st Cir. 2000) ........................................................... 39

*United States v. Wallace,*
964 F.3d 386 (5th Cir. 2020) ........................................................... 31

*United States v. Wooden,*
945 F.3d 498 (6th Cir. 2019) ............................................................. 8

*United States v. Young,*
809 F. App'x 203 (5th Cir. 2020) ...................................................... 10

*Warren v. State*,
2020 Tex. App. LEXIS 2473 (Tex. App.—Tyler 2020, pet. ref'd) (unpublished) ................................................................ 27

*Wilson v. State*,
1998 Tex. App. LEXIS 6044 (Tex. App.—Dallas 1998) (unpublished) ........................................................................ 27

*Wilson v. Taylor*,
658 F.2d 1021 (5th Cir. 1981) ...................................... 24, 35

*Wooden v. United States*,
142 S. Ct. 1063 (2022) ............................................... *passim*

*Ysassi v. State*,
1998 Tex. App. LEXIS 3459 (Tex. App.—Dallas 1998, no pet.) (unpublished) ................................................................. 27

**Statutes**

18 U.S.C. § 922(g)(1) .................................................... 43, 50

18 U.S.C. § 844(i) ............................................................. 41

18 U.S.C. § 924(a)(2) .......................................................... 43

18 U.S.C. § 924(e) ...................................................... *passim*

18 U.S.C. § 924(e)(1) ................................................ 7, 44, 54

18 U.S.C. § 924(e)(2)(B)(i) ................................................... 7

18 U.S.C. § 924(e)(2)(B)(ii) .................................. 20, 23, 40, 41

18 U.S.C. § 3559(a)(3) ......................................................... 43

18 U.S.C. § 3583(b)(1) ........................................................ 44

18 U.S.C. § 3583(b)(2) ........................................................ 43

28 U.S.C. § 994(h) .............................................................. 37

Tex. Penal Code Ann. § 30.01 ........................................ 26, 27

Tex. Penal Code Ann. § 30.02(a) ..................................................... 26, 31

**Sentencing Guidelines**

U.S.S.G. § 2K1.4(a)(2) .................................................................. 41

U.S.S.G. § 2K2.1 .......................................................................... 43

U.S.S.G. § 2K2.1(a)(4) .................................................................. 43

U.S.S.G. § 4B1.2(a)(2) ................................................................... 41

U.S.S.G. § 4B1.4, cmt. n. 1 ........................................................... 54

U.S.S.G. § 4B1.4, comment ........................................................... 53

U.S.S.G. Ch. 5, Pt. A ..................................................... 30, 41, 44

U.S.S.G. App. A. ........................................................................... 43

U.S.S.G. App. C, amend. 798 ........................................... 37, 38

**Other Authorities**

Fed. R. Crim. P. 11(b)(1)(H) .............................................. 49, 56

81 Fed. Reg. 27262-01, 27274 (May 5, 2016) ......................... 40

Moore's Federal Practice § 134.04[2] Matthew Bender ed ed.
1997) ....................................................................................... 35

## Statement of Jurisdiction

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.  18 U.S.C. § 3231.  Appellant was charged with and convicted of violating Title 18 U.S.C. §922(g)(1). ROA.24, 39-40.

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States. 28 U.S.C. § 1291. Notice of appeal in a criminal case must be filed in the district court within 14 days of the entry of judgment. Fed. R. App. P. 4(b)(1). The judgment was signed January 20, 2023. ROA.55. Appellant's notice of appeal was filed January 18, 2023. ROA.51-52.

This is an appeal from a final judgment.

## Statement of Issues Presented

1. Whether the district court erred in holding that Schorovsky's two prior robbery convictions were committed on separate occasions (as required by the ACCA), given that the Government failed to prove this fact by way of *Shepard*-approved documents.

2. Whether the district court improperly sentenced Schorovsky as an a armed career criminal based on judge-found facts that increased Schorovsky's statutory sentencing range from zero to fifteen years, to fifteen years to life.

3. Whether Schorovsky was improperly characterized as an armed career criminal, based in part on his prior Texas burglary conviction, which can be committed by conduct that amounts to nothing more than entering a storage shed in somebody's backyard with the intent to take a lawn mower.

4. Whether, given that "burglary of a dwelling" is no longer considered a violent crime under the Career Offender Guideline, Schrovsky's 180-month mandatory minimum sentence under the ACCA violates his due process right to notice, and is contrary to the goals, purpose and objectives of the Sentencing Commission.

5. Whether Schorovsky entered a knowing, voluntary guilty plea, given that the magistrate judge taking the plea misinformed him as to the maximum statutory sentence he could receive if found to have three previous convictions for a violent felony or a serious drug offense.

TO THE HONORABLE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

NOW COMES Richard Schorovsky, Appellant, by and through undersigned counsel, and files this brief pursuant to the Federal Rules of Appellate Procedure.

## Statement of the Case

Schorovsky was charged in a one-count indictment (filed August 31, 2022), with the felony offense of possession of a firearm by a felon, in violation of Title 18 U.S.C. § 922(g)(1). ROA.24.

On October 11, 2022, Schorovsky entered a guilty plea (without a plea agreement) to the charged offense before a magistrate judge. ROA.78, 90. The magistrate judge recommended that Schorovsky's guilty plea be accepted and the district court adopted that recommendation. ROA.33-34, 39-40.

On November 23, 2022, Schorovsky's trial counsel moved to withdraw, stating that the "attorney-client relationship has become extremely adversarial." ROA.41-43. At a hearing on the motion, Schorovsky stated his trial counsel was not present during the PSR

interview. ROA.97. Schorovsky also complained that the presentence investigation report (PSR) had enhanced his sentence under the Armed Career Criminal Act. ROA.101, 109. The magistrate judge denied Schorovsky's request for new counsel. ROA.114.

On January 11[1], 2023, the district court (having determined Schorovsky to be an armed career criminal) sentenced Schorovsky to 180 months in prison, five years of supervised release and no fine. ROA.116, 125-26.

Schorovsky's notice of appeal was filed January 18, 2023. ROA.51-52. Trial counsel was allowed to withdraw, and undersigned counsel was appointed to handle the appeal. ROA.53-54.

---

[1] The judgment was signed January 20, 2023. ROA.55.

## Summary of the Argument

**First issue:** Schorovsky has two prior Texas robbery convictions, both of which were used as separate predicates to characterize him as an armed career criminal. This required the Government to establish that the robberies were "committed on occasions different from one another." The only evidence that can be properly consulted in making this determination is that listed in *Shepard v. United States,* 544 U.S. 13 (2005). The *Shepard*-approved documents provided herein proved only that the robberies were committed against different people. The documents in no way established that the robberies were not part of a single episode, as that term was used *Wooden v. United States,* 142 S. Ct. 1063 (2022). Therefore, Schorovsky was improperly sentenced as an armed career criminal.

**Second issue:** (Alternative) Schorovsky did not admit that the two robberies were committed on occasions different from one another. Nor did a jury so find. The district judge, all by himself, decided that the locations and timing of the robberies were such that they were separate events. These "judge-found" facts increased Schorovsky's statutory range of punishment from zero to fifteen years, to fifteen years to life, in

violation of *Apprendi v. New Jersey, Mathis v. United States,* and *Descamps v. United States.*

**Third issue:** Schorovsky has a prior burglary conviction which was used as the third ACCA predicate. The Fifth Circuit held in *United States v. Herrold,* 941 F.3d 173 (5th Cir. 2019) that (1) the Texas burglary statute is indivisible, and (2) a violation of any of subsections of the Texas burglary statute constitutes generic burglary for purposes of the ACCA. However, in *United States v. Stitt,* 139 S.Ct. 399 (2018), the Supreme Court held that "burglary" for purposes of the ACCA must include burglarizing "a structure or vehicle that has been adapted or is customarily used for overnight accommodation." The *Stitt* Court went on to reaffirm that structures used only for storage continue to be outside the purview of generic burglary. Texas case law is replete with burglary of a building convictions where the structure at issue was used only for storage. *Herrold* is thus irreconcilable with *Stitt* in this regard.

**Fourth issue:** (Alternative) The Sentencing Commission expressly modeled the Career Offender Guideline after the ACCA. Under the ACCA, burglary is a violent felony. But in 2016, the Sentencing Commission deleted "burglary of a dwelling" from its enumerated list of

4

"crimes of violence," based on empirical evidence that burglary offenses rarely result in physical violence, and historically, career offenders have rarely been rearrested for burglary offense after release. Congress approved this amendment to the Guidelines. So we now have conflicting "laws," both of which purport to provide notice of what constitutes a crime of violence. Title 18 U.S.C. § 924(e)(2)(B)(ii) says burglary is a violent crime. Section 4B1.2(a)(2) of the Guidelines says it's not. Given this uncertainty, under the rule of lenity, Schorovsky's burglary conviction should not be used as an ACCA predicate.

**Fifth issue:** (Alternative) At the time Schorovsky entered his guilty plea in front of a magistrate judge, the judge advised him that the statutory range of punishment for being a felon in possession of a firearm was zero to fifteen years, even though the judge was on notice, based on the written factual basis, that Schorovsky had two prior robbery convictions and one prior burglary conviction, which made Schorovsky subject to the increased statutory penalties of the ACCA. When Schorovsky complained, after seeing the PSR, the magistrate judge told him (incorrectly) that (1) the ACCA sentencing range was not mandatory, and (2) the ACCA was not an enhancement, but instead "relevant

conduct." Based on all this misinformation, Schorovsky did not enter a knowing, voluntary guilty plea.

## Argument and Authorities

***1. Because the Government failed to prove through Shepard-approved documents that Schorovsky's two prior robbery convictions were committed on separate occasions (as required by the ACCA), the district court erred in holding that Schorovsky's the convictions were committed on separate occasions.***

### *(a) The Armed Career Criminal Act and Wooden v. United States*

Title 18 U.S.C. § 924(e) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony . . . *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years[.]

18 U.S.C. § 924(e)(1). "Violent felony," as defined in the ACCA, includes:

> Any crime punishable by imprisonment for a term exceeding one year . . . that has an element the use, attempted use, or threatened use of physical force against the person of another[.]

18 U.S.C. § 924(e)(2)(B)(i).

In *Wooden v. United States,* 142 S. Ct. 1063 (2022), the Supreme Court addressed how the phrase "committed on occasions different from one another" is to be construed. In 1997, William Dale Wooden, in the

course of one evening, burglarized ten units in a single storage facility,
subsequently pleading guilty to a ten-count indictment, each count
alleging burglary of one of the storage units. *United States v. Wooden*,
945 F.3d 498, 504 (6th Cir. 2019), *rev'd,* 142 S. Ct. 1063 (2022). Two
decades later, Wooden was convicted of being a felon in possession of a
firearm. The PSR characterized him as an armed career criminal,
counting each of the ten counts as a separate prior burglary conviction.
*Wooden,* 945 F.3d at 504. Wooden objected, arguing that because the ten
burglaries arose out of a single occurrence, they could not function as
separate ACCA predicates. *Id.* The district court disagreed, as did the
Sixth Circuit. *Id.* at 506. The Sixth Circuit took the position that:

> [I]t is possible to discern the point at which Wooden's first
> offense for entering or remaining in a building was completed
> and the subsequent point at which his second offense began.

*Id.* at 505.

The Supreme Court reversed. The Court held that "occasion" means
an episode, and that "Wooden's night of crime is a perfect case in point."
*Wooden,* 142 S. Ct. at 1069. The following quotes are instructive:

> Offenses committed close in time, in an uninterrupted course
> of conduct, will often count as part of one occasion; not so
> offenses separated by substantial gaps in time or significant
> intervening events. Proximity of location is also important;

the further away crimes take place, the less likely they are components of the same criminal event. *And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.* (Emphasis added.)

*Id.* at 1071.

The burglaries were part and parcel of the same scheme, actuated by the same motive, and accomplished by the same means.

*Id.*

Wooden . . . served [a] significant sentence[] for his [burglaries] and rightly so. But in enacting the occasions clause, Congress made certain that crimes like [his], taken alone, would not subject a person to a 15-year minimum sentence for illegally possessing a gun.

*Id.* at 1074.

### *(b) Proving an ACCA enhancement*

The Government bears the initial burden of establishing a prior conviction as an § 924(e) sentencing enhancement. *United States v. Constante,* 544 F.3d 584, 587 (5th Cir. 2008). In determining whether prior convictions involved acts committed on occasions different from one another,

a court may examine only *Shepard*-approved"[2] material, comprising the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. (Cleaned up)

*United States v. Stevens*, No. 20-11264, __ F. App'x __, 2022 U.S. App. LEXIS 35317, at *2-3 (5th Cir. 2022) (citing *United States v. Fuller,* 453 F.3d 274, 279 (5th Cir. 2006)). A district court is *not* permitted to rely on a PSR's characterization of a prior conviction as an ACCA enhancement; nor can a court rely on police reports. *United States v. Young*, 809 F. App'x 203, 210 (5th Cir. 2020).

*(c) Background*

The PSR characterized Schorovsky as an armed career criminal, based in part on the following robbery convictions:

A conviction on or about December 19, 2012, for Robbery, a Texas Second Degree Felony, which conviction occurred in the 244th District Court of Odessa, Texas, under Cause Number C40339.

A conviction on or about December 19, 2012, for Aggravated Robbery, a Texas First Degree Felony, which conviction occurred in the 244th District Court in Odessa, Texas, under Cause Number C40340.

---

[2] *Shepard v. United States*, 544 U.S. 13 (2005).

ROA.155-56, PSR ¶ 17.

### (d) Standard of review and error preservation

A district court's determination that a prior conviction qualifies as an ACCA predicate is reviewed de novo. *United States v. Flores*, 922 F.3d 681, 683 (5th Cir. 2019). Schorovsky objected in writing to both robberies being characterized as ACCA predicates:

> Mr. Schorovsky objects to the Chapter Four Enhancement and being labeled an armed career criminal. Mr. Schorovsky's 2012 offenses should be considered part of the same criminal episode as they occurred in short succession, resulting in the same arrest and conviction date.

ROA.175.

### (e) Analysis

The probation officer's response to Schorovsky's objection cited to *Wooden*, and included the following language:

> Schorovsky committed Aggravated Robbery at a Chili's located in Odessa, Texas, on January 26, 2012. Two days later, on January 28, 2012, he committed Robbery at a 7-11 Convenience Store, also located in Odessa, Texas. . . . In this case, the two crimes were committed two days apart from one

11

> another, and they were committed at different locations which
> were not in close proximity to one another.

ROA.173. These statements of course prove nothing as to time and location because the statements were simply taken from the PSR. See ROA.162-63, PSR ¶¶ 41, 42. The probation officer's response however, did make reference to the charging instruments and judgments for both robbery convictions, noting that the arrest date and conviction date were the same for both but that the "Offense Date" was different. ROA.173.

The district court, in overruling Schorovsky's objection at sentencing, cited to and adopted the probation officer's response taken from the PSR:

> I agree with . . . and will adopt the response by . . . U.S. Probation officer Worthy. The court does believe that – obviously the offense dates are all separate, including the first two, even though first two are two days apart, and the arrest date's the same, conviction date's the same, punishment, the same. *But the two crimes were committed two days apart from one another, committed at different locations, not in close proximity to one another. Just a part of Officer Worthy's response. I'm adopting the entire thing.*

ROA.119.

Again, according to *Shepard v. United States,* a later court determining the character of a prior conviction for ACCA purposes,

> is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.

*Shepard*, 544 U.S. at 16. The district court mentioned at sentencing: "I also have certified copies I think Officer Worthy probably secured for me." ROA.120. As to the robberies, certified copies of *only* the indictments and judgments appear in the electronic record at ROA.131-40. The indictment in Cause Number C40339 alleges that Schorovsky,

> On or about the 28th day of February 2012, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly, threaten or place Larry C. Jackson in fear of imminent bodily injury or death.

ROA.131. The indictment in Cause Number C40340 alleges that Schorovsky,

> On or about the 26th day of January, 2012, did then and there, while in the course of committing theft of property and with intent to obtain or main control of said property, intentionally or knowingly threaten or place Dawson Mills in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a gun.

ROA.135. Does the fact that the indictments appear to allege conduct separated by two days mean that the conduct actually was separated by two days? Answer: No. Under Texas law, the date alleged in the

13

indictment establishes only two things: (1) that the offense conduct occurred prior to the presentment of the indictment, and (2) that the offense conduct occurred within the statutory limitation period. *Sledge v. State,* 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997). "The State need not allege a specific date in an indictment." *Id.* at 255. The only thing the indictments establish is that the robberies were committed against different victims. Conspicuously absent is any mention of time or location.

What about the written judgments? The judgment in Cause Number C-40-339, under "Date of Offense," says "1/28/2012." ROA.132. The judgment in Cause Number C-40-340, under "Date of Offense," says "1/26/2012." ROA.137. But these listed dates are not explicit factual findings by the trial judge to which the Schorovsky assented. While written judgments may be used to establish the *fact* of conviction or to show *which part* of the statute a defendant is convicted of violating, they do not otherwise constitute factual findings for purposes of the ACCA. *See United States v. Solano-Hernandez*, 761 F. App'x 276, 281-82 (5th Cir. 2019) (Holding that it was obvious error for a district court to rely on a "statement of reasons" attached to a New Jersey state court judgment

to narrow the state of conviction); *Mathis v. United States,* 579 U.S. 500, 512 (2016) ("Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary.").

The bottom line is that *Shepard*–approved documents herein establish only that Schorovsky's robberies involved different victims. The Government did not therefore establish that the robberies were "committed on occasions different from one another." *See Fuller,* 453 F.3d 279-80 (Defendant's sentence vacated where Fifth Circuit panel could not determine, based on *Shepard*-approved material, whether burglaries occurred on different occasions).

It is also worth noting that despite Schorovsky's lengthy criminal record, these are the only robberies. To paraphrase *Wooden,*

> Schorovsky served a significant sentence for his robberies (ten years) and rightly so. But in enacting the occasions clause, Congress made certain that crimes like his, taken alone, would not subject a person to a 15-year minimum sentence for illegally possessing a gun.

*See Wooden,* 142 S. Ct. at 1074.

***2. Alternatively, because (1) a jury did not find beyond a reasonable doubt that Schorovsky committed the robberies on occasions different from one another, and (2) Schorovsky did not admit to that fact, the district court's finding of that fact violated Apprendi v. New Jersey.***

*(a) Analysis*

In *Apprendi v. New Jersey,* the Supreme Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

530 U.S. 466, 490 (2000).

> It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Id.*

In the context of the ACCA, the Court has noted:

> Under ACCA, *the court's finding of a predicate offense indisputably increases the maximum penalty.* Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. (Emphasis added.)

*Descamps v. United States,* 570 U.S. 254, 269 (2013). The only finding a sentencing court can properly make regarding a purported ACCA

predicate conviction is to analyze the elements of the statute of conviction
and determine whether or not those elements come within the purview
of "a violent felony or a serious drug offense" as those terms are used in
18 U.S.C. § 924(e). *Mathis,* 579 U.S. at 511.

> [A] construction of ACCA allowing a sentencing judge to go
> any further would raise serious Sixth Amendment concerns.
> This Court has held that only a jury, and not a judge, may find
> facts that increase a maximum penalty, except for the simple
> fact of a prior conviction. . . . That means a judge cannot go
> beyond identifying the crime of conviction to explore the
> manner in which the defendant committed that offense. . .
> . *He can do no more, consistent with the Sixth Amendment,*
> *than determine what crime, with what elements, the*
> *defendant was convicted of.* (Emphasis added).

*Id.* at 511-12.

In *Wooden v. United States,* the Court's analysis as to why the
defendant's ten prior burglary convictions – committed the same night –
were not committed on occasions different from one another, was
particularly fact-driven:

> Here, *every relevant consideration* shows that Wooden
> burglarized ten storage units on a single occasion, even
> though his criminal activity resulted in double-digit
> convictions. Wooden committed his burglaries on *a single*
> *night, in a single uninterrupted course of conduct. The crimes*
> *all took place at one location*, a one-building storage facility
> with one address. *Each offense was essentially identical, and*
> *all were intertwined with the others. The burglaries were part*

17

> *and parcel of the same scheme, actuated by the same motive, and accomplished by the same means.* Indeed, each burglary in some sense facilitated the next, as Wooden moved from unit to unit to unit, all in a row. *And reflecting all these facts,* Georgia law treated the burglaries as integrally connected. Because they "ar[ose] from the same conduct," the prosecutor had to charge all ten in a single indictment. (Emphasis added.)

*Wooden*, 142 S. Ct. at 1071.

In Schorovsky's case, the district judge, by himself, made all of these relevant fact-findings regarding timing and location:

> The court does believe that – obviously the offense dates are all separate, including the first two, even though first two are two days apart, and the arrest date's the same, conviction date's the same, punishment, the same. *But the two crimes were committed two days apart from one another, committed at different locations, not in close proximity to one another.*

ROA.119. In so doing, the district court increased Schorovsky's maximum statutory sentence from 15 years in prison to life in prison. *See United States v. Hornyak,* 805 F.3d 196, 198 (5th Cir. 2015) ("[T]he ACCA elevates the statutory sentencing range to a minimum of fifteen years and maximum of life."). It would be a difficult to imagine a more blatant example of judge-found facts used to increase a statutory maximum sentence.

*(b) Plain error*

Because Schorovsky did not object to being sentenced as an armed career criminal on the basis that the district court was improperly finding facts that increased his statutory maximum sentence, review is arguably for plain error. *See United States v. Hunley*, No. 20-6285, 2023 U.S. App. LEXIS 5770, at *5 (6th Cir. 2023). But a straightforward application of *Descamps, Mathis,* and *Wooden* can yield only one conclusion: The district judge committed an obvious error in finding all the additional facts needed to conclude that Schorovsky committed the two robberies on separate occasions. *See United States v. Man*, No. 21-10241, 2022 U.S. App. LEXIS 32807, at *3 (9th Cir. 2022) (Government concedes following *Wooden* that *Apprendi* error occurred, given that jury did not find, nor did defendant admit that defendant's violent felonies were committed on occasions different from one another). Regarding whether Schorovsky's substantial rights have been affected, see Issue 3(h) below.

*3. Schorovsky was improperly characterized as an armed career criminal for the reason that his Texas predicate burglary conviction can be committed by conduct that amounts to nothing more than entering a storage shed in somebody's backyard with the intent to take a lawn mower.*

### (a) ACCA and burglary

The ACCA also includes burglary within its definition of a violent felony:

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary[.]

18 U.S.C. § 924(e)(2)(B)(ii).

### (b) Background

The PSR characterized Schorovsky as an armed career criminal under Title 18 U.S.C. § 924(e) based on three prior convictions, one of which was a Texas burglary conviction:

- On February 21, 2013, the defendant was convicted of Burglary of a Habitation in the 238th District Court of Midland County, TX, in Docket Number: XE36607.

ROA.156, PSR ¶ 17.

*(c) The rules*

In determining whether an offender's prior convictions qualify as ACCA enhancements, courts are to generally use the "categorical approach," under which they can look only to the statutory definitions of the prior offenses. *Shular v. United States,* 140 S.Ct. 779, 783 (2020). Stated another way, a prior conviction qualifies as an ACCA predicate only if its statutory elements are the same as, or narrower than, the generic crime. *Mathis,* 579 U.S. at 504. Under the categorical approach, a court can look only to the statutory elements themselves. *Id.* at 511 ("[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense."). The court may not look to court documents from the prior conviction. *Descamps,* 570 U.S. at 258.

If a statute consists of only one set of elements that defines the crime, it is considered an "indivisible" statute. *Descamps,* 570 U.S. at 258. If a statute has multiple elements, thereby defining multiple crimes, it is considered a "divisible" statute. *Id.* at 257. In this situation, courts are allowed to look past the statute to a "limited class of documents" (e.g. charging instruments, jury instructions, and plea agreements) to

determine which crime was committed. *Mathis,* 579 U.S. at 505-06. This has come to be known as the "modified categorical approach." *Id.* If however, a statute simply lists differing manner and means by which a conduct element can be committed (determined by whether the conduct requires jury unanimity), a sentencing court cannot go beyond the statutory elements themselves in determining whether a prior conviction constitutes an ACCA predicate. *Id.* at 511. Stated another way, when a crime consists of a single indivisible set of elements, courts may not employ the modified categorical approach. *Descamps,* 570 U.S. at 258.

In determining whether a prior state conviction constitutes an ACCA predicate, a court must presume that the convictions "rested upon nothing more than the least of the acts criminalized." (cleaned up). *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). Yet there must a realistic probability – not a theoretical possibility – that the State would apply the statute to conduct that falls outside the generic definition of a crime. *Id.* If the prior statutorily defined crime covers more conduct than the generic offense, it is not an ACCA predicate. *Mathis,* 579 U.S. at 509. And specifically as to the instant case, if the elements of a prior state burglary

conviction cover more conduct than generic burglary, "then it is not an ACCA burglary." *Id.*

*(d) Generic burglary after United States v. Stitt*

In *United States v. Stitt*, 586 U.S. __, 139 S.Ct. 399 (2018), the Supreme Court held that "burglary" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii) must include burglarizing "a structure or vehicle that has been adapted or is customarily used for overnight accommodation." *Stitt,* 139 S.Ct. at 403-04. At issue therein were two statutes, a Tennessee burglary statute and an Arkansas burglary statute, both of which criminalized burglarizing a structure or vehicle that has been adapted or is customarily used for overnight accommodation. *Id.* at 404. The Court held that generic "burglary" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii) includes such conduct. *Id.* at 403-04, 407. The Court noted the inherent danger in burglarizing a structure that is customarily used for overnight accommodation:

> [A]t the time the [Armed Career Criminal] Act was passed. *Ibid.* In 1986, a majority of state burglary statutes covered vehicles *adapted or customarily used for lodging*[.] (Emphasis added.)

*Id.* at 406.

For another thing, Congress, as we said in *Taylor* [*v. United States*], viewed burglary as an inherently dangerous crime because burglary "creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.". . . An offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily *used for lodging* runs a similar or greater risk of violent confrontation. (Emphasis added)

*Id.*

Although, as respondents point out, the risk of violence is diminished if, for example, a vehicle is only *used for lodging* part of the time, we have no reason to believe that Congress intended to make a part-time/full-time distinction. After all, a burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a holiday. (Emphasis added.)

*Id.*

The *Stitt* Court went on to distinguish its holding from its previous holdings in *Taylor v. United States,* 495 U.S. 575 (1990) and *Mathis*:

In *Taylor* . . . we referred to a Missouri breaking and entering statute that among other things criminalized breaking and entering "*any* boat or vessel, or railroad car." . . . We did say that that particular provision was *beyond the scope* of the federal Act. But the statute used the word "any"; it referred to ordinary boats and vessels often at sea (and railroad cars *often filled with cargo, not people*), *nowhere restricting its coverage, as here, to vehicles or structures customarily used or adapted for overnight accommodation.* (Emphasis added.)

*Stitt,* 139 S.Ct. at 407.

In *Mathis*, we considered an Iowa statute that covered "any building, structure, . . . land, water or air vehicle, or similar place adapted for overnight accommodation of persons [or used] for the storage or safekeeping of anything of value." Courts have construed that statute to cover ordinary vehicles *because they can be used for storage or safekeeping*. . . . That is presumably why, as we wrote in our opinion, "all parties agree[d]" that Iowa's burglary statute "covers more conduct than generic burglary does."

. . .

[T]he Court in *Mathis did not decide the question* now before us—that is, whether coverage of vehicles designed or *adapted for overnight use* takes the statute outside the generic burglary definition. (Emphasis added.)

*Stitt,* 139 S.Ct. at 407.

What is important from *Stitt* for the instant case is that structures used for storage, safekeeping, and cargo – not people – *continue to be outside the purview of generic burglary*.

*(e) The Texas burglary statute*

The Texas burglary statute provides in relevant part as follows:

(a) A person commits an offense if, without the effective consent of the owner, the person:

   (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

   (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

    (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02(a). Under the definition section:

    (1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

    (A) each separately secured or occupied portion of the structure or vehicle; and

    (B) each structure appurtenant to or connected with the structure or vehicle.

    (2) "Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

Tex. Penal Code Ann. § 30.01.

*(f) Analysis*

    The Fifth Circuit held recently (re-held actually[3]) that the § 30.02(a), in its entirety, is indivisible. *United States v. Herrold,* 941 F.3d 173, 175 (5th Cir. 2019) (en banc) (*Herrold II*). That means two things: (1) There is only one burglary offense, with multiple manner and means of committing that one offense, and (2) Only the statute – not court

---

[3] *See United States v. Herrold,* 883 F.3d 517, 529 (5th Cir. 2018) (en banc) (*Herrold I*), *overruled in part,* 941 F.3d 173.

documents – can be looked to in determining whether the statute criminalizes conduct outside of generic burglary.

Assuming the "least of the acts criminalized" by the burglary statute, suppose a person enters a building with the intent to commit theft. Again, building is defined as:

> any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

Tex. Penal Code Ann. § 30.01. Texas courts have upheld burglary of a building convictions in each of the following cases, *none of which involved a structure that was used for overnight accommodation*: *Warren v. State*, 2020 Tex. App. LEXIS 2473, at *6-7, 9 (Tex. App.—Tyler 2020, pet. ref'd) (unpublished) (defendant stole the victim's lawn mower from the victim's backyard storage shed); *Ellett v. State*, 607 S.W.2d 545, 548-49 (Tex. Crim. App. 1980) (defendant entered former hotel that had been closed for years and was being used for storage, and had broken-out and boarded windows; Court stated, "We hold that 'storage' constitutes a 'use' within the scope of Sec. 30.01[.]"); *Wilson v. State*, 1998 Tex. App. LEXIS 6044, at *4-5 (Tex. App.—Dallas 1998) (unpublished) (Defendant took show horse bridles from tack room in victim's barn); *Ysassi v. State*, 1998 Tex.

App. LEXIS 3459, at *5-6 (Tex. App.—Dallas 1998, no pet.) (unpublished) (Defendant stole gardening tools from a structure attached to a nursery used for storing fertilizer, chemicals and tools); *Batiste v. State*, 1993 Tex. App. LEXIS 3020, at *1, 6 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (Defendant stole lawn mower from detached garage at the end of a long driveway, the garage being used to park the family's cars and to store tools); *In re J.T.*, 824 S.W.2d 671, 673 (Tex. App.—Fort Worth 1992, no pet.) (Defendant stole fireworks from a fireworks stand, "a small little house built on a trailer."); *Frizzell v. State*, 1987 Tex. App. LEXIS 8318, at *3 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (unpublished) (Defendant attempted to take a welding machine inside a storage building); *Allen v. State*, 719 S.W.2d 258, 259 (Tex. App.—Waco 1986, no pet.) (Defendant stole tires from a trailer used to store auto supplies and tires); *Lopez v. State*, 660 S.W.2d 592, 594 (Tex. App.—Corpus Christi 1983, pet. ref'd) (Defendant stole tools from locked office in a radiator shop); *See also Kemp v. State*, 2020 Tex. App. LEXIS 2506, at *5-9 (Tex. App.—Fort Worth Mar. 26, 2020, no pet.) (unpublished) (Defendant on trial for burglary of a habitation was entitled an instruction on the lesser included offense of burglary of a building, given that the structure

appeared to be used only for storage; "brimming with trash bags, boxes, and bins full of goods.").

According to *Stitt*, generic burglary requires evidence that the structure under consideration has "been adapted or is customarily used for overnight accommodation." *Stitt,* 139 S.Ct. at 403-04. If the statute at issue criminalizes burglarizing a structure that is only used for storage, safekeeping, or cargo, the statute criminalizes conduct outside the generic definition of burglary. *Id.* at 407. Thus, Schorovsky's prior Texas burglary conviction is not an ACCA predicate. *See United States v. Driscoll,* 892 F.3d 1127, 1134 (10th Cir. 2018) ("[I]f Driscoll cut a fence at Stockman Land Corporation and stole an item off of the corporation's land, then he would be guilty under Nebraska's burglary statute but not under the generic definition of burglary.").

## *(g) Error preservation and standard of review*

A district court's interpretation or application of the Sentencing Guideline is generally subject to de novo review and a court's factual

findings are reviewed for clear error. *United States v. Gaspar-Felipe*, 4 F.4th 330, 342 (5th Cir. 2021).

Schorovsky objected to his burglary of a habitation conviction being characterized as a violent felony for purposes of the ACCA. ROA.175. The U.S. probation officer responded thusly:

> The probation officer cites *United States v. Herrold (Herrold II)*, 941 F.3d 173, 177, 182 (5th Cir. 2019) (en banc), *cert denied*, in which the 5th Circuit held a Texas burglary of a habitation conviction qualifies as a violent felony for purposes of the ACCA.

ROA.173. The district court agreed with the probation officer's response. ROA.120.

### (h) Harm

According to the PSR, Schorovsky's total offense level without the ACCA enhancement would have been 17 (adjusted offense level of 20 minus 3-level acceptance of responsibility reduction). ROA.155-56, PSR ¶¶ 11, 18, 19. Assuming Schorovsky's criminal history category was IV, his advisory guideline range would have been 37-46 months. U.S.S.G. Ch. 5, Pt. A. Because of the ACCA enhancement, Schorovsky was

sentenced to 180 months. ROA.109, 112. The eleven-year plus difference constitutes harm.

### (i) But what about United States v. Herrold II?

As noted above, in *Herrold II* the Fifth Circuit in an *en banc* decision held that § 30.02(a) – which describes the three ways burglary can be committed in Texas – is indivisible. *Herrold,* 941 F.3d at 175. But that is not all that *Herrold II* held. The Court also held: "Texas's [burglary] statute is generic[.]" *Id.* at 177. If there was any doubt about that holding, it was removed in *United States v. Wallace,* 964 F.3d 386 (5th Cir. 2020). The *Wallace* panel specifically set forth all three subsections of § 30.02(a) and held that the entirety of § 30.02(a) constitutes generic burglary, citing *Herrold II. Wallace,* 964 F.3d at 388. The *Wallace* opinion concludes thusly:

> Our *en banc* court says [the Texas burglary statute is generic].
> We must adhere to that.

*Wallace,* 964 F.3d at 390.

So according to the Fifth Circuit, the Texas burglary statute is generic *and* it is indivisible. If a statute is generic and indivisible, that means that any conduct covered by the statute is within the generic

definition. *See Elmakhzoumi v. Sessions*, 883 F.3d 1170, 1172-73 (9th Cir. 2018) (Generic rape includes all conduct within California statute). That presents a problem in this case. Here's why. The Supreme Court says in *Stitt* that generic burglary must involve a structure that, at least on occasion, is adapted for overnight lodging. Therefore for the Texas burglary statute to qualify as generic burglary, it must also require that the structure entered be adapted for use for overnight lodging. *See Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 186 (2007) (State conviction qualifies as burglary if it has the basic elements of generic burglary). Yet, *none* of the ten Texas burglary of a building cases cited above (and those are only a sample) involved a structure that was ever used for overnight accommodation. Each of those structures was used for nothing more than storage. And *Stitt* reaffirms the Supreme Court's prior holdings that statutes that criminalize burglarizing structures used for nothing more than storage are *not* statutes that come within the purview of generic burglary. *Stitt,* 139 S.Ct. at 407. Schorovsky thus argues that the Texas burglary statute is not a fit within generic burglary. *See Brown v. United States,* 929 F.3d 554, 557-58 (8th Cir. 2019) (Citing *Stitt,* defendant's prior Missouri burglary conviction held not to be an ACCA predicate where

statute included burglarizing of buildings where "goods, wares, merchandise or other valuable things kept or deposited"); *United States v. Jones,* 951 F.3d 1138, 1141-42 (9th Cir. 2020) (Citing *Stitt*, The requirement of adaptation for overnight accommodation means that a dwelling under the statute cannot cover a car in which a homeless person occasionally sleeps or a vehicle merely used for the storage or safekeeping of property.) As to this matter then, *Stitt* and *Herrold* are irreconcilable. When a Supreme Court decision is irreconcilable with the law of the Fifth Circuit, the Supreme Court decision controls. *See Carter v. S. Cent. Bell*, 912 F.2d 832, 840 (5th Cir. 1990).

The Government may argue that Schorovsky's argument is foreclosed by *Herrold II*, given that the opinion appears to hold that all Texas burglary convictions are generic burglary. But Schorovsky is making arguments that either were not made or not supported in *Herrold II.* The appellant in *Herrold* argued as follows as to why the Texas burglary statute does not constitute generic burglary:

- The Texas burglary statute does not require that an offender form a specific intent to commit another crime; *Herrold,* 941 F.3d at 178-80; Fifth Circuit response: "[H]is argument fails for lack of supportive Texas Cases;" *Id.* at 179;

- The Texas burglary statute does not require a "breaking"; *Herrold,* 941 F.3d at 180-81; Fifth Circuit response: "No Texas burglary conviction can stand without proof that the entry or remaining-in was without the owner's effective consent;" *Id.* at 181;

- The Texas burglary statute contemplates burglary of a facility open to the public; *Herrold,* 941 F.3d at 181; Fifth Circuit response: "One who enters a public facility has consent to do so. We are pointed to no case holding otherwise;" *Id.*

Schorovsky, on the other hand, is arguing that the Texas burglary statute covers buildings that (1) are *not* appurtenant to or connected to a covered structure, and (2) are specifically *not* "adapted or is customarily used for overnight accommodation." And Schorovsky, unlike the appellant in *Herrold*, cited *ten* Texas cases (and could have cited more) in support of his argument. Because Schorovsky is making an argument (a supported argument) different from those made in *Herrold*, his argument is not foreclosed by circuit precedent. *See Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993) (explaining an opinion is not binding precedent on an issue "never squarely addressed" even if the opinion "assumed" one resolution of the issue); *United States v. Newbold,* 791 F.3d 455, 464 (4th Cir. 2015) ("The government also overlooks the fact that the defendant in that case never raised the argument asserted here[in]"). See also:

A decision of an appellate court constitutes a precedent only insofar as it determines some issue of law. For stare decisis to be applied, an issue of law must have been heard and decided. *If an issue is not argued,* or is argued but is ignored by the court, or is reserved, *the decision does not constitute a precedent to be followed in subsequent cases in which the same issue arises.* (Emphasis added.)

Moore's Federal Practice § 134.04[2](Matthew Bender 3d ed. 1997).

Schorovsky acknowledges that the rule of orderliness generally requires a supervening Supreme Court decision in order to overturn circuit precedent. But that is not always the rule. *See Wilson v. Taylor,* 658 F.2d 1021, 1034-35 (5th Cir. 1981) (refusing the apply rule of orderliness to a Fifth Circuit decision that conflicted with an *earlier* Supreme Court opinion). According to *Stitt,* generic burglary requires evidence that the structure under consideration has "been adapted or is customarily used for overnight accommodation." *Stitt,* 139 S.Ct. at 403-04. Yet, if *Herrold* is allowed to go uncorrected, a person in Texas can steal a hoe out of a shed on somebody's back forty and get himself an ACCA burglary predicate.

*4. Alternatively, given that "burglary of a dwelling" is no longer considered a violent crime under the Career Offender Guideline, Schrovsky's 180-month mandatory minimum sentence under the ACCA violates his due process right to notice, and is contrary to the goals, purpose and objectives of the Sentencing Commission.*

### (a) Historical interplay between the career-offender Guideline and the ACCA

"[T]he Sentencing Commission expressly modeled the career-offender Guideline after the ACCA." *Lester v. United States,* 921 F.3d 1306, 1330 n.4 (11th Cir. 2019). The definition of a predicate "crime of violence," for purposes of the Sentencing Guidelines' career offender enhancement, closely tracks the ACCA's definition of a "violent felony." *James v. United States*, 550 U.S. 192, 206 (2007). Section 4B1.4, entitled "Armed Career Criminal," is the sentencing guideline that applies to the ACCA. In 1995, the Second Circuit stated:

> [Section] 4B1.4 is consistent with Congress's intent to have the guidelines provide "*a comprehensive and consistent statement of the Federal law of sentencing*" that would "structure judicial sentencing discretion [and] eliminate indeterminate sentencing." . . . *Section 4B1.4 was designed to offer a more consistent approach to sentencing armed career criminals.* (Emphasis added.)

*United States v. McCarthy*, 54 F.3d 51, 53 (2d Cir. 1995).

36

*(b) Amendment 798*

Effective August 1, 2016, the Sentencing Commission deleted "burglary of a dwelling" from the enumerated offenses clause set forth in §4B1.2 of the Sentencing Guidelines. U.S.S.G. App. C, amend. 798. The following statements appear under "Reason for Amendment":

> This amendment is a result of the Commission's multi-year study of statutory and guideline definitions relating to the nature of a defendant's prior conviction (e.g., "crime of violence," "aggravated felony," "violent felony, "drug trafficking offense," and "felony drug offense") and the impact of such definitions on the relevant statutory and guideline provisions (e.g., career offender, illegal reentry, *and armed career criminal*).
>
> . . .
>
> The "crime of violence" definition at §4B1.2 is used to trigger increased sentences under several provisions in the Guidelines Manual, the most significant of which is §4B1.1 (Career Offender). . . . The career offender guideline implements a directive to the Commission set forth at 28 U.S.C. § 994(h), which in turn identifies offenders for whom the guidelines must provide increased punishment.
>
> . . .
>
> The amendment deletes "burglary of a dwelling" from the list of enumerated offenses. In implementing this change, the Commission considered that (1) burglary offenses rarely result in physical violence, (2) "burglary of a dwelling" is rarely the instant offense of conviction or the determinative predicate for purposes of triggering higher penalties under the career offender guideline, and (3) historically, career offenders have rarely been rearrested for burglary offense after release. The

Commission considered several studies and analyses in reaching these conclusions.

. . .

In reaching this conclusion, the Commission also considered that courts have struggled with identifying a uniform contemporary, generic definition of "burglary of a dwelling."

U.S.S.G. App. C, amend. 798. The Supreme Court accords great deference

to the Sentencing Commission:

> As then Chief Judge Breyer explained, "[t]he Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between" a particular offense and "the likelihood of accompanying violence."

*James v. United States*, 550 U.S. 192, 206 (2007).


   *(c) Dueling "laws"*

"Engrained in our concept of due process is the requirement of

notice." *Lambert v. California,* 355 U.S. 225, 228 (1957). There is a

presumption that every person knows what the law forbids and what the

law requires to be done. *United States v. Buford,* 889 F.2d 1406, 1408-09

(5th Cir. 1989). This is because generally, "publication of a criminal

statute afford adequate notice to the public at large." *Roberts v. Maine,* 48 F.3d 1287, 1300 (1st Cir. 1995) (Cyr J., concurring); *see also United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."). Due process guarantees defendants "fair warning," not only of what constitutes a crime, but also what punishment attaches to a crime. *Rubino v. Lynaugh,* 845 F.2d 1266, 1273 (5th Cir. 1988). However, it is not only published statutes that give a defendant notice of the punishment that attaches to a crime. The Sentencing Guidelines are also public records that put a defendant on notice as to how he can be sentenced. *United States v. Beard,* 913 F.2d 193, 198 (5th Cir. 1990); *see also United States v. Walker,* 234 F.3d 780, 789 (1st Cir. 2000) (Sentencing Guidelines put defendant on notice that perjury during the sentencing hearing could lead to an obstruction enhancement). And commentary issued by the Sentencing Commission is generally binding and authoritative. *Stinson v. United States,* 508 U.S. 36, 43 (1993).

As noted above, under the ACCA, the term "violent felony" includes burglary:

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary[.]

18 U.S.C. § 924(e)(2)(B)(ii). This would appear to put a defendant on notice that a prior burglary conviction is a violent felony. But, as noted above, the Sentencing Guidelines now tell him just the opposite – burglary of a dwelling is *not* a violent felony. So which is it? To add further confusion, what later became amendment 798 to the Guidelines was submitted for public comment on May 5, 2016. United States Sentencing Commission, Sentencing Guidelines for United States Courts, 81 Fed. Reg. 27262-01, 27274 (May 5, 2016). Presumably, the amendment was presented to Congress at the same time, enabling Congress to voice its disapproval if the amendment contravened its wishes. *See United States v. Price*, No. 93-1892, 1993 U.S. App. LEXIS 26406, at *6-7 (7th Cir. 1993). But Congress did not disapprove of the amendment and it went into effect August 1, 2016. So what is the legislative intent as to whether or not burglary should now be considered a violent crime? We simply don't know. *See Chalmers v. City of L.A.*, No. 82-6112, 1984 U.S. App. LEXIS 22615, at *5-6 (9th Cir. 1984) (conflicting statutes failed to provide due process notice to plaintiff).

Consider the following – not farfetched – hypothetical. Arson is a "violent felony" under the ACCA (18 U.S.C. § 924(e)(2)(B)(ii)), and it is a "crime of violence" under the Career Offender guideline. U.S.S.G. § 4B1.2(a)(2). Defendant A is convicted under the federal arson statute, 18 U.S.C. § 844(i). He has three prior felony burglary convictions. Assume (1) his offense created a substantial risk of death or serious bodily injury to a person other than himself, (2) he receives a 3-level reduction for acceptance of responsibility, and (3) his criminal history category is IV. Because burglary of a dwelling is not a "crime of violence," he is not a career offender and his advisory sentencing range is 36-46 months. U.S.S.G. § 2K1.4(a)(2), U.S.S.G. Ch. 5, Pt. A. Defendant B, on the other hand,  is convicted of being a felon in possession of a firearm, which is neither a violent felony nor a crime of violence. Defendant B also has three prior burglary convictions. Under the ACCA, his sentencing range is 15 years to life, irrespective of his criminal history or whether he accepts responsibility. Something is wrong here.

*(d) Rule of lenity*

Under the rule of lenity, "any reasonable doubt about the application of a penal law must be resolved in favor of liberty." *United States v. Hamilton*, 46 F.4th 389, 397 n.2 (5th Cir. 2022) (citing *Wooden v. United States*, 142 S. Ct. 1063, 1081 (2022) (Gorsuch, J., concurring)). For the reasons set forth above, we have every reason to believe that Congress no longer considers burglary to be a violent felony. Under the rule of lenity, the issue should be resolved in Schorovsky's favor. *See United States v. Bass,* 404 U.S. 336, 347-48 (1971) (rule of lenity is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should."). His prior burglary conviction should not be deemed an ACCA predicate.[4]

---

[4] Schorovsky also has a prior felony burglary of a building conviction. ROA.161, PSR ¶ 37. This conviction was not used as an ACCA predicate. For all the reasons set forth in Schorovsky's third and fourth issues, he argues that this conviction should not be considered a substitute predicate under harmless error review.

***5. Alternatively, Schorovsky did not enter a knowing, voluntary guilty plea because the magistrate judge taking the plea misinformed him as to the maximum statutory sentence he could receive if found to have three previous convictions for a violent felony or a serious drug offense.***

*(a) The ACCA as compared to the Sentencing Guidelines*

The statutory maximum sentence generally for a person convicted under 18 U.S.C. § 922(g)(1) is now 15 years in prison. 18 U.S.C. § 924(a)(2). It is thus a Class C felony. 18 U.S.C. § 3559(a)(3). By statute, a Class C felony cannot be assessed more than three years of supervised release. 18 U.S.C. § 3583(b)(2). The Sentencing Guideline applicable to 18 U.S.C. 922(g)(1) is § 2K2.1. U.S.S.G. App. A. Section 2K2.1 provides that if the defendant committed any part of the instant offense after sustaining one felony conviction for either a crime of violence or a controlled substance offense, his base offense level is 20. U.S.S.G. § 2K2.1(a)(4). The PSR, based on Schorovsky's prior aggravated robbery conviction, began its calculations by placing him at a level 20. ROA.155, PSR ¶ 11. With a 3-level acceptance of responsibility reduction (ROA.156, PSR ¶¶ 18, 19), and assuming the PSR correctly placed Schorovsky in a criminal history category of IV (ROA.163, ¶ 45), his advisory sentencing range would be 37-46 months. U.S.S.G. Ch. 5, Pt. A.

However, Title 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA), provides in relevant part as follows:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . of this title for a violent felony . . . , committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than 15 years[.]

18 U.S.C. § 924(e)(1). The maximum term of imprisonment that can be assessed is life. *Hornyak,* 805 F.3d at 198.  Because in this scenario, the maximum term is life, the conviction is a Class A felony, and the defendant can be placed on supervised release for up to five years. 18 U.S.C. § 3583(b)(1). And because the PSR characterized Schorovsky as an armed career criminal, his sentencing range jumped to 180 months to life. ROA.168, PSR ¶ 64.

### (b) Background

At an October 6, 2022 status conference, the magistrate judge advised Schorovsky that the statutory punishment range for a felon in possession charge had been recently changed, with the maximum sentence now being 15 years:

> There was some legislation that went through apparently during the summer with one of these shootings or something,

and tagged onto there somewhere they changed the punishment range on a felon in possession. So it went from a zero to ten to a zero to fifteen.

ROA.70.

The written factual basis supporting Schorovsky's guilty plea (presumably drafted by the Government) listed three prior felony convictions:

> A conviction on or about December 19, 2012, for Robbery, a Texas Second Degree Felony, which conviction occurred in the 244th District Court of Odessa, Texas, under Cause Number C40339.

> A conviction on or about December 19, 2012, for Aggravated Robbery, a Texas First Degree Felony, which conviction occurred in the 244th District Court in Odessa, Texas, under Cause Number C40340.

> A conviction on or about January 9, 2013, for Burglary of a Habitation, a Texas Second Degree Felony, which conviction occurred in the 238th District Court in Midland, Texas, Under Cause Number CR36607.

ROA.149.

Despite these three convictions being set forth in the factual basis, during the plea colloquy at rearraignment, the magistrate judge continued to advise Schorovsky that his maximum statutory sentencing

exposure was fifteen years in prison and three years of supervised release:

> Mag. Court: All right. Let me go over the statutory penalty range you face. Then I'm going to talk to you about how the guidelines are going to work in your case. Okay?

> Schorovsky: Yes, sir.

ROA.137-38.

> Mag. Court: So by statute, and we talked about this last week, I think. This statute just recently changed. The penalty range you face on this charge is a zero to fifteen year term of imprisonment. *So it's anywhere between zero and fifteen years in prison.*

> *The supervised release term is not to exceed three years. So it's zero to three years on supervised release.* A fine not to exceed $250,000 and a $100 special assessment. That's by statute. Do you understand?

> Schorovsky: Yes, sir.

> Mag. Court: So what's going to happen is the district judge, Judge Counts, will impose a sentence in your case after considering guidelines established by the United States Sentencing Commission. A range of punishment will be determined considering such things as the nature and circumstances of the offense, your conduct in the case, and any criminal history you might or might not have.

> Those . . . sentencing guidelines and the range are advisory only on the district judge. He can sentence you within that guideline range, but he doesn't have to. If the district judge wanted to, he could sentence you to any reasonable term *so long as it falls within the statutory range I just went over.* Do you understand?

> Schorovsky: Yes, sir.

ROA.86-87.

However, the magistrate judge's recommendation to the district judge added ACCA language that was never communicated to Schorovsky:

> The Defendant was admonished pursuant to Title 18, to the statutory penalty range of up to fifteen (15) years imprisonment, a maximum three (3) years supervised release, a fine not to exceed two hundred fifty thousand dollars ($250,000), and a one hundred dollar ($100.00) mandatory special assessment. *However, if the Court determines the Defendant has three prior convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, the statutory penalty range shall be at least (15) years imprisonment, up to five (5) years supervised release,* a fine not to exceed two hundred fifty thousand dollars ($250,000), and a one hundred dollar ($100.00) mandatory special assessment.

ROA.33.

*(c) Plea voluntariness, Rule 11 and standards of review*

Whether a guilty plea was made voluntarily is reviewed *de novo*. *United States v. Smith,* 184 F.3d 415, 417 (5th Cir. 1999). "Because a guilty plea involves the waiver of several constitutional rights, it must be made intelligently and voluntarily." *United States v. Reyes,* 300 F.3d 555, 558 (5th Cir. 2002) (citing *Boykin v. Alabama,* 394 U.S. 238, 242-44 (1969)). To be knowing and intelligent, the defendant must have "a full

understanding of what the plea connotes and of its consequence." *Boykin,* 395 U.S. at 244. The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985). "Voluntariness" has to do with the defendant being permitted to make a free choice among the available acceptable alternatives, while "intelligence" has to do with whether the defendant possesses the information necessary to choose among the alternatives. *United States v. Hernandez,* 203 F.3d 614, 618 n.5 (9th Cir. 2000). A plea is not a knowing plea unless, among other things, the defendant understand what the maximum possible penalty is. *United States v. Hernandez,* 234 F.3d 252, 254 n.3 (5th Cir. 2000). Total ignorance of the outer limits of the penalty the defendant could suffer renders the plea agreement invalid under due process. *Lewellyn v. Wainwright,* 593 F.2d 15, 17 (5th Cir. 1979); *see also Dalton v. Battaglia,* 402 F.3d 729, 733 (7th Cir. 2005) ("We can imagine no consequence of a defendant's guilty plea more direct, immediate, and automatic than the maximum amount of time [he] may serve as a result of [his] plea."). A criminal conviction

grounded upon an involuntary plea of guilty is violative of due process of law. *Oaks v. Wainwright,* 445 F.2d 1062, 1063 (5th Cir. 1971).

"Rule 11 ensures that a guilty plea is knowing and voluntary by requiring the district court to follow certain procedures before accepting such a plea." *United States v. Reyes,* 300 F.3d 555, 558 (5th Cir. 2002). Rule 11 of the Federal Rules of Criminal Procedure requires courts to properly advise defendants of any possible maximum penalty, including imprisonment. Fed. R. Crim. P. 11(b)(1)(H). When a defendant objects at the district court level to the court's failure to comply with Rule during the plea colloquy, review is conducted under the harmless error standard. *United States v. Carreon-Ibarra,* 673 F.3d 358, 363 (5th Cir. 2012). Harmless error analysis asks two questions: (1) Did the sentencing court vary from the procedures required by Rule 11, and (2) if so, did such variance affect the substantial rights of the defendant. *Smith,* 184 F.3d at 417.

*(d) Instructive case*

*United States v. Gray,* 581 F.3d 749 (8th Cir. 2009), wherein the defendant was convicted under § 922(g)(1) and sentenced as an armed career criminal, is nearly on all fours with this case. At the time the defendant entered his guilty plea, he was advised that the maximum term of imprisonment was ten years in prison, but he was also advised (unlike Schorovsky) that if he was determined to be an armed career criminal, his minimum sentence would be 15 years in prison. *Gray,* 581 F.3d at 751. The defendant was not advised that his maximum sentence could be life in prison. *Id.* He filed *pro se* objections:

> On the front page of the presentence report, under OFFENSE it lists my Count 1 as 924(e)(1) which enhances the sentence to 15 years to life, which is not what I was indicted under or pled guilty to. I was indicted under 924(a)(2). This is what is on my indictment, and what I pled guilty to. There is a significant difference in the punishment range between the two categories.

*Id.* at 751. At sentencing he argued: "They told me that my charge carried one to ten." "I never heard of this until the PSI came." *Id.* The Eighth Circuit determined that the defendant had preserved error:

Liberally construed[5], these *pro se* arguments should be read as Gray objecting to the court's failure to inform him of the minimum and maximum sentences he faced, which are clear violations of Rule 11. Because Gray timely objected . . . this Court reviews for harmless error.

*Id.* at 753. The Court also held that the error was not harmless:

In this case, . . . the judge did not understate the maximum penalty; rather he omitted mention of any maximum penalty. . . . Given the complete failure to inform Gray he could be sentenced up to life in prison should he be found to be an armed career criminal, as well as Gray's vociferous complaints upon learning the same, we cannot say with certainty that had Gray known of the accurate range of imprisonment he faced by pleading guilty, he would have pled guilty anyway.

*Id.* at 754-55.

### (e) Error preservation

At the hearing on trial counsel's motion to withdraw, Schorovsky made it abundantly clear that he felt like he'd been blindsided by being characterized as an armed career criminal:

Mag. Court: So what's going on? Is there something else? Or you just don't like Ms. Prucka, or what is it?

Schorovsky: No, it's not that. She's a good lawyer. It's just that I'm getting enhanced on something that's not even nowhere in the

---

[5] The Eighth Circuit noted: "We liberally construe *pro se* objections to determine whether the defendant objected." *Gray,* 581 F.3d at 752-53.

sentencing guideline or the ACC Act. They're enhancing me on
something that I've been following the ACC Act.

Mag. Court: What enhancement? What enhancement are you talking
about?

Schorovsky: The Armed Career Criminal Act. It's ACC. They're trying
to enhance me on a burglary of a habitation and . . . I got cases to back
up what I'm saying.

Mag. Court: Okay. The just –

Schorovsky: Just it's –

Mag. Court: Listen –

Schorovsky: -- (indiscernible) that everybody goes by it . . . I'm not going
to go by it. It's my life. You know what I'm saying?

In responding, the magistrate court incorrectly advised Schorovsky

that the district court was not required to sentence Schorovsky under the

ACCA:

Okay. But here's the thing Mr. Schorovsky, here's the thing.
In the federal system, right or wrong, there's a sentencing
guidelines, right. And there's a way to calculate sentences.
*Now, it doesn't mean that the Judge has to – he's not bound
by that. It's not mandatory on him. But he uses all those, the
guidelines in an advisory capacity.*

ROA.101-02. Not true, § 4B1.4 provides:

This section implements 18 U.S.C. § 924(e), which *requires* a
minimum sentence of imprisonment of fifteen years for a
defendant who violates 18 U.S.C. § 922(g) and has three

> previous convictions for a violent felony or a serious drug offense.

U.S.S.G. § 4B1.4, comment. (backg'd); *See also Gray,* 581 F.3d at 753 ("If a defendant is determined to be an armed career criminal pursuant to § 924(e), a 15-year minimum sentence is mandatory, not just a 'possibility.'").

The magistrate further mis-advised Schorovsky that the ACCA was not really an enhancement, but instead "relevant conduct":

Mag. Court: And if you will work with the lawyer, . . . She can object to it, or she can try to understand why it's there, or make you understand why it's there and . . . argue for you, advocate for you when you're sentenced why it should or should not apply. But I'm just, I'm lost. We talked about this at your plea, and *I'm not sure that this is as much of an enhancement as it is it's relevant conduct that's getting added on to your sentence because if it was a real enhancement, we would have talked about that –*

Schorovsky: I mean, it's on the PSI. . . . It counted the points to it.

Mag. Court: Adding points to it. *But it's not an enhancement like with a gun or something like that in this case. It's not an enhancement, is it? Is it an enhancement, or is it just relevant conduct?*

AUSA: No, Your Honor, It's an addition of points for his previous conduct.

. . .

Mag. Court: *We definitely should talk about enhancement at pleas if we have them. So this is a sentencing issue about how that relevant conduct, nature and circumstances of the offense, your conduct in the case, all that stuff that Probation's going to look at and say this counts, this doesn't, this counts. That's all it is.*

ROA.101-03.

Again, not true. The ACCA is most certainly an enhancement:

This guideline applies in the case of a defendant subject to an *enhanced* sentence under 18 U.S.C. § 924(e). Under 18 U.S.C. § 924(e)(1), a defendant is subject to an *enhanced* sentence if the instant offense of conviction is a violation of 18 U.S.C. § 922(g) and the defendant has at least three prior convictions for a "violent felony" or "serious drug offense," or both, committed on occasions different from one another.

U.S.S.G. § 4B1.4, cmt. n. 1.

The exchange continued:

Mag. Court: I mean, unless I'm missing it, Mr. Schorovsky, and sometimes I miss stuff. A lot of times I miss stuff. So tell me where I'm flawed here.

Schorovsky: [] I've been in the system for a long time. . . . And I would get ran over every time I went to court, every time from juvenile to here. They always try to run me over, give me – max me out, do this and do that. And, you know what I'm saying, I'm not going to accept it.

Mag. Court: Okay.

Schorovsky: And I can't say that certain words that an intelligent person could understand. . . . This ain't no – this is my life.

Mag. Court: I understand.

Schorovsky: I just got done doing ten years for two cases that counted against me. That's double jeopardy. I just did ten years . . . on the two charges they're trying to enhance me on. . .  it's unfair man. It don't

54

even make no sense. How am I going to get more time when I just got done doing ten years ˙˙[6]

ROA.104-05.

Mag. Court: So is there a breakdown with Ms. Prucka, or is there just a breakdown that you're ticked off because you don't want that conviction in there?

Schorovsky: No, I'm ticked off because I'm getting railroaded. . . .

Mag. Court: How are you getting railroaded?

Schorovsky: Because they're putting charges, they're enhancing me on the PSI when I don't even file up over it. That shoots me to a 33. That's 188 to life. Come on, man. I mean, *you'd object to it*, too, if you were looking at that much time.

ROA.109.

Schorovsky also objected in writing to the ACCA enhancement:

The defendant objects to the Chapter Four Enhancement and being labeled an armed career criminal. The defendant's 2012 offenses should be considered part of the same criminal episode as they occurred in short succession, resulting in the same arrest and conviction date.

ROA.171. Schorovsky argues that he has preserved error.

---

[6] According to the PSR, Schorovsky was released from prison February 16, 2022, having served sentences for aggravated robbery, robbery and burglary of a habitation. ROA.162-63, PSR ¶¶ 41, 42, 43. He was arrested for the instant offense five months later. ROA.154, PSR ¶ 5.

*(f) Analysis*

In *United States v. Rodriquez,* 553 U.S. 377 (2008), the Supreme Court made the following observations:

> Suppose that a defendant who indisputably had more than three prior convictions for "violent felonies" or "serious drug offenses" was charged in federal court with violating the felon-in-possession statute. Under ACCA, this defendant would face a sentence of "not less than 15 years." . . . Suppose that the defendant asked his or her attorney, "What's the maximum term I face for the new offense?" An attorney aware of ACCA would surely not respond, "10 years," even though 10 years is the maximum sentence without the ACCA enhancement. . . .
>
> Suppose that the defendant then pleaded guilty to the felon-in-possession charge. Under Federal Rule of Criminal Procedure 11(b)(1)(H), the trial judge would be required to advise the defendant of the "maximum possible penalty." *If the judge told the defendant that the maximum possible sentence was 10 years and then imposed a sentence of 15 years based on ACCA, the defendant would have been sorely misled and would have a ground for moving to withdraw the plea.* (cleaned up) (Emphasis added.)

*Id.* at 383-84.

Schorovsky was "sorely misled." He was advised that the maximum sentence of imprisonment he could receive was fifteen years. But the maximum sentence of imprisonment was life. He was advised that the minimum sentence of imprisonment he could receive was zero. But the

minimum sentence was fifteen years. He was advised that the maximum term of supervised release would be three years. But he was given five years of supervised release. He was told that the district court was not required to sentence him under the ACCA. Not true. He was told that the ACCA was not an enhancement. Also not true. Schorovsky did not enter a knowing voluntary guilty plea. *See United States v. Carreon-Ibarra,* 673 F.3d 358, 364-65, 367 (5th Cir. 2012) (plea colloquy "amounted to a complete failure to address the plea-consequences concern of Rule 11" where plea agreement made no mention of thirty-year mandatory minimum sentence for possession of a machine gun); *United States v. Rivera-Maldonado,* 560 F.3d 16, 20-21 (1st Cir. 2009) (reviewing for plain error, defendant held to not have entered a knowing, voluntary guilty plea when he was advised that his maximum term of supervised release was three years, but he was assessed a lifetime term of supervised release).

## Relief Requested

Schorovsky requests that his sentence be vacated and that the cause be remanded back to the district court for resentencing with a directive that the ACCA enhancement does not apply. Alternatively, he requests that he be returned to his pre-plea status so he can decide whether or not to take his case to trial.

Respectfully submitted,

/s/ John A. Kuchera

John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

## Certificate of Service

I certify that on the 5th day of May, 2023, I electronically filed the foregoing with the Fifth Circuit Court of Appeals using the CM/ECF system which will send notification of such filing to the following:

Mr. Joseph H. Gay, Jr.,
Assistant United States Attorney

/s/ John A. Kuchera
John A. Kuchera

## Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 11,505 words, excluding the parts of the brief exempted by Fed. R. App. P 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P 32(a)(5) and the type style requirements of Fed. R. App. P because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century, size 14 font.

/s/ John A. Kuchera
John A. Kuchera

Attorney for Richard Schorovsky
Dated:  May 5, 2023